Lynn James HUDSON,
Plaintiff-Respondent,

v.

Ernest G. CARR, Defendant-Appellant.

No. 65216.

Supreme Court of Missouri,
En Banc.

March 20, 1984.
As Modified April 16, 1984.
Rehearing Denied April 16, 1984.

Ray Dickhaner, Hillsboro, for defendant-appellant.

Earl R. Blackwell, Hillsboro, for plaintiff-respondent.

BLACKMAR, Judge.

The plaintiff recovered a judgment for $180,000 for personal injuries. The defendant appeals arguing, first, that the judgment for the plaintiff is barred because of collateral estoppel on the issue of contributory negligence, and, second, that plaintiff's damage instruction should have been modified in accordance with Note on Use No. 3 to MAI 4.01. The Court of Appeals, by unanimous action of the 14 judges, transferred the case here for resolution of the collateral estoppel issue. We decide all issues in the case as on original appeal, Mo. Const. Art. V, Sec. 10, and conclude that the doctrine of collateral estoppel should be applied, necessitating a remand for reduction of the judgment. We do not find it necessary to order a new trial either on liability or on damages. We borrow certain portions of Judge Gerald M. Smith's opinion.

### 1. *Collateral Estoppel*

The plaintiff, on September 1980, was driving an automobile owned by his brother, Gerald. That vehicle collided with one driven by defendant Carr. Gerald brought suit against defendant for property damage to the vehicle. Defendant brought plaintiff into that suit on an impleader for apportionment, and also sought consolidation of plaintiff's suit against him for personal injuries (the present case) but plaintiff successfully opposed consolidation. A jury trial on Gerald's suit resulted in a verdict apportioning Gerald's property damage judgment, 60% against defendant Carr and 40% against plaintiff. Carr raised plaintiff's contributory negligence as a defense in its original answer and, by amendment after the property damage verdict, raised the defenses of res judicata and collateral estoppel. Upon motion, the court struck the defenses that were based upon the property damage verdict. Plaintiff's petition originally pled as primary negligence that defendant Carr was on the wrong side of the road. This was also the allegation of Gerald's property damage petition. A humanitarian doctrine claim was presented by amendment but not submitted and the case went to the jury only on the allegations of primary negligence.

Defendant argues that the jury in the property damage suit found the plaintiff 40% responsible for the collision and that, under the law as it existed prior to the holding in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), this degree of negligence barred any recovery. The plaintiff argues that the jury which heard the property damage case did not know that its finding as to the apportioned percentages of fault would have any effect upon the plaintiff's suit for personal injuries, and that for this reason it would be very unfair to apply the doctrine of collateral estoppel as a total bar.

The striking circumstance, as the case comes to us, is that the law of Missouri was not the same at the time the case was tried, or at the time of the Court of Appeals opinion, as it is now. *Gustafson v. Benda, supra,* intervenes. We postponed the effect of that holding until publication in the Southwestern Reporter [1] to avoid disrupting trials which had been held under different assumptions, or trials soon to be held. Here there is the fortuitous circumstance that an issue was drawn in the property damage suit, between this plaintiff and this defendant, in which the jury answered the very question which would have been submitted under *Gustafson*, in determining the proportions in which the fault of the plaintiff and that of the defendant contributed to the collision. The majority of this Court which decided *Gustafson* did so in the conviction that it represented a legal approach which was superior to then existing doctrine. When this new law may be applied as easily as it can be under the circumstances of this case, we see no reason for not applying it.

---

**1.** The opinion was handed down November 22, 1983 and was published in the January 31, 1984

Advance Sheets.

In *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979), the Court set out the following principles for application of collateral estoppel:

> The court in reviewing whether the application of collateral estoppel is appropriate should consider: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.... Most courts have added a fourth factor to the three enunciated ...: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.... Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality. (Emphasis in original).

*Oates* was a case in which the question was the use of collateral estoppel by a non-party to the original suit against a party to that suit. The court held that collateral estoppel could be used by a non-party, thereby eliminating the requirement of mutuality of estoppel. It is at least arguable that the fourth factor of full and fair opportunity to litigate referred to in *Oates* is applicable only when there exists an absence of mutuality. In *Jones v. Corcoran,* 625 S.W.2d 173, 174 (Mo.App.1981), the court stated in dictum that it did not consider the *Oates* fairness doctrine limited to that situation. We need not resolve the point because it seems clear, in the case before us, that all four criteria have been met. Defendant's allegations in seeking to invoke the collateral estoppel defense are sufficient to meet the *Oates* test, and proof at trial was excused when the defenses were struck on motion.

Prior to *Gustafson* courts indicated an uneasiness in applying collateral estoppel to cases tried in accordance with *Missouri Pacific Railroad Company v. Whitehead & Kales,* 566 S.W.2d 466 (Mo. banc 1978). *Cf. Jones v. Corcoran, supra.* As the law then stood the negligence of defendants was compared but that of plaintiffs was not. This dilemma no longer besets us. The injustice perceived in the earlier cases no longer is a factor.

The Court of Appeals expressed concern about whether the record was sufficient to permit final resolution of the case or whether, in the event the collateral estoppel claim were found to have merit, there would have to be a remand for the taking of evidence. The defendant of course offered no evidence on the collateral estoppel issue after the defense was struck from his answer. We believe that the record as supplemented by the briefs of the parties demonstrates that no genuine issue of fact remains. The plaintiff was a party to the prior suit, which resulted in a judgment on the merits. He had every opportunity to demonstrate to the jury that he was free from negligence and that the defendant's negligence was solely responsible for the collision. The jury made a finding determining relative fault of the parties. It is not significant that the jury was not aware of the effect of its action. It explicitly determined an essential fact issue and there is every reason why its factual determination should control. The nature of collateral estoppel is such that a fact appropriately determined in one lawsuit is given effect in another case involving different issues. Inherent in the doctrine is the assumption that juries do their duty and follow instructions. We believe that, by the application of the doctrine of collateral estoppel in comparative negligence cases, the volume of trial work will be reduced and the manifest benefits of having only one trial of cases involving identical issues will be achieved. The appropriate remedy, then, is to reduce the plaintiff's judgment on the verdict by 40%, resulting in a net judgment of $108,000.

### 2. *Error in Instruction*

Plaintiff's Instruction No. 11 on damages is taken from MAI 4.01 without change and reads as follows:

### INSTRUCTION NO. 11

If you find in favor of plaintiff on plaintiff's claim for damages, then you

must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future *as a direct result of the occurrence mentioned in the evidence.* (Emphasis supplied).

The defendant argues that, under the evidence, this instruction should have been modified as directed by Note on Use No. 3 to MAI 4.01, because of evidence in the record that the plaintiff had had a fall in December of 1981 resulting in a "fracture." It is argued that this subsequent fall constituted a separate "occurrence" and that the bald reference to "occurrence" in the instruction might have been confusing to the jury or might have led the jury to believe that the defendant was liable for damage caused by the second accident. Defendant cited *Thweat v. Haefner,* 539 S.W.2d 734 (Mo.App.1976), in which the record of subsequent accidents was much more substantial and dramatic than in this case.

■ Failure to follow MAI, including the Notes on Use, is error, with the prejudicial effect of the error subject to judicial assessment. Rule 70.02(b). It is not enough to show erroneous deviation unless prejudice also appears. We conclude that any error was not prejudicial in the context of this record.

■ The defendant argues that the plaintiff made no attempt to show that the December, 1981 fall was caused in any respect by the injury sustained in the initial collision, and introduced no expert testimony supporting such a showing. The case was tried with a minimum of expert evidence. This is not necessarily bad if the medical evidence clearly enunciates the prognosis and is sufficient to support the award. The plaintiff introduced various medical records containing diagnosis and prognosis, including records of examinations both before and after the plaintiff's fall. The most recent examination took place in February of 1982, and there is no mention of any additional injury, or aggra-

vation of the injury, by any fall subsequent to the collision. The records show that the plaintiff suffered a permanent shortening of his right leg which interferes with his employment and many of his customary activities. It is not asserted that $180,000 for damages is excessive.

The fall resulting in the second fracture was described by the plaintiff on direct examination as follows: "I stumbled and refractured my leg. It wasn't fractured near as bad. It was just a hairline crack where it was healed." He also explained that the second fall put him back on crutches for three weeks but did not require hospitalization.

The defendant made no mention of the second fall in argument. We do not believe that the jury could possibly be confused or misled into thinking that it was obliged to award damages for cause by any "occurrence" other than the automobile collision. Eight witnesses testified that they saw the collision. One was the defendant and three others were passengers in his car. Liability was sharply contested. If the jury heard no evidence connecting the fall with the collision it is not likely that it would award plaintiff damages for such additional injuries as were occasioned solely by the fall. The issue is not whether damages could be awarded for injuries resulting from the fall, but whether the word "occurrence" was confusing to the jury. The trial judge necessarily concluded that the instruction was not prejudicial, and it is appropriate to defer to his ability to view the panorama of the trial.

■ Had the defendant really considered that there was substantial prejudice in the instruction, so that he would be less able to present his contentions to the jury, he could have pointed out the problem highlighted by Note on Use No. 3 to MAI 4.01 and could have requested a clarification, or could have submitted his own instruction containing the modification he considered appropriate. Contemporaneous objections to instructions are not required to preserve claims of legal error (Rule 70.03), but failure to raise the issue during trial or to request a modification may be considered

in determining whether a variation from MAI is prejudicial. This is especially so when the court gives a text instruction in express terms and the deviation consists in a failure to modify it. If a defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled. Counsel should think twice before simply putting perceived deviations from MAI or the Notes on Use into the error bag, instead of asking for a more satisfactory instruction.

Nothing we say should deter submitting counsel from a scrupulous reading and application of MAI and the Notes on Use, but when the instruction is only abstractly erroneous there is a need for balancing and balancing in this instance indicates that a new trial is not necessary.

The judgment is reversed and the case is remanded with directions to enter judgment for the plaintiff for $108,000.

All concur.