**Joseph Lee KOPP, Plaintiff-Respondent,**

v.

**James E. PENNOYER, Defendant—Third Party Plaintiff-Appellant**

v.

**Robert E. RUTHERFORD, Third Party Defendant-Respondent.**

**No. 51241.**

Missouri Court of Appeals, Eastern District, Southern Division.

Dec. 30, 1986.

Motion for Rehearing and/or Transfer Denied Feb. 3, 1987.

Stephen E. Walsh, Poplar Bluff, for plaintiff-respondent.

V. Kenneth Rohrer, Farmington, for defendant-third party plaintiff.

SNYDER, Chief Judge.

This is an action for damages for personal injuries and property damage which arose out of an accident involving three vehicles. A counterclaim was filed by the original defendant, Pennoyer. He also filed a third party petition against Rutherford. After a jury trial and verdict, judgment was rendered for the plaintiff Kopp on his petition and on defendant Pennoyer's counterclaim. On the third party petition Pennoyer obtained judgment against Rutherford. The jury assessed the fault 99% to Pennoyer and 1% to Rutherford.

Pennoyer appeals, alleging the trial court erred by giving instruction number 11, MAI 4.01. He contends the instruction should have been modified in accordance with Note on Use No. 3 to MAI 4.01 by

including a description of the event which gave rise to the lawsuit. Appellant also alleges the trial court erred by overruling his objections to the reading of the deposition of plaintiff's doctor and to the doctor's testimony that plaintiff's injuries "could possibly" be permanent. The points are denied and the judgment is affirmed.

On a bitter cold winter night in January of 1984, plaintiff Kopp left his employment at a shoe company in Ironton, Missouri, to drive home. He had a problem with his car overheating which caused him to stop twice at the side of the road, the second time at the end of a driveway near a mailbox, on the right side of the northbound lane, parallel with the highway.

Rutherford was a co-worker of Kopp who followed Kopp after they left the shoe company. As Rutherford passed the Kopp car sitting on the side of the road, he saw Kopp's car lights flashing. Rutherford drove on by, turned around in a driveway, and drove back, parking his car, also on the right side of the northbound lane, facing Kopp's parked vehicle. Rutherford's car was off the road and in line with the Kopp vehicle.

There was some conflict in the evidence on the question whether the vehicles were completely off the road, but this was resolved in plaintiff's favor by the jury.

There was a small hill crest about a quarter of a mile south of the location of the parked automobiles. Pennoyer, driving north on the highway, came over the crest of the hill, saw what he took to be the bright lights of an automobile in his lane, drove to the right, and collided with the rear of Kopp's automobile which was driven into Rutherford's automobile.

Kopp was injured, sustaining a cut on his forehead and soft tissue injuries to his shoulder and neck. Pennoyer had applied his brakes causing skid marks on the road up to the point of the collision of the right front of his automobile with the left rear of Kopp's.

Kopp also sustained lacerations to his knees. He was treated by Dr. Gerald Rob-

erts. It is unnecessary to this opinion to go into the details of the treatment.

In appellant's first point he complains that the trial court's failure to modify MAI 4.01, Instruction Number 11, to describe more specifically the occurrence from which the alleged damages arose, was error. Appellant bases his argument on evidence of a lower back injury incurred by respondent Kopp in February of 1984 when he bent over, and another work-related injury which he sustained about one year later. The point is not well taken.

Appellant objected to the trial court's submission of instruction number 11, a version of MAI 4.01, modified only to name the plaintiff, but unmodified to describe the occurrence giving rise to the damages claimed by respondent. Appellant did not specifically point out the problem highlighted by Note on Use No. 3 to MAI 4.01, nor did he request a clarification or a modification of the instruction. Appellant was more specific in raising the objection in his motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.

Failure to raise the issue during trial or to request the modification may be considered in determining whether a variation from MAI is prejudicial. *Hudson v. Carr*, 668 S.W.2d 68, 71–72 [5] (Mo.banc 1984).

Assuming, but not deciding, that the trial court erred in instructing the jury with MAI 4.01 unmodified to describe specifically the occurrence giving rise to respondent's injuries, the error, if any, was not prejudicial.

The automobile accident happened on January 18, 1984. This was the occurrence mentioned in the evidence, but there was evidence of two other occurrences. Approximately a month after the automobile collision, respondent Kopp testified he hurt his lower back in bending over at home. He said that he had problems with his lower back but it was not related to the accident and that he was not asking for damages for that injury. He was treated once for the lower back injury. In April of 1985 he suffered an accident at work.

The only possible connection between the lower back injury and the injury to his shoulder and neck which was caused by the collision was indicated by his affirmative response to a question on cross examination in which he was asked whether he was careful about how he moved his shoulder or neck because of the lower back injury.

Appellant's closing argument was directed almost exclusively to the liability question and not to the evidence of the other occurrences on which he relies so heavily in his brief. He mentioned the lower back pain a month after the collision, but the doctor testified this was not related to the accident. Appellant's counsel in closing argument said, "We also have the overlay of underlying lower back pain right afterwards and then trying to claim all this time off, even though he suffered from severe low back pain a month after which the doctor said wasn't related to this."

Respondent's counsel emphasized throughout the trial that respondent was not claiming any damages for the lower back injury and there was no probative evidence that there was any connection between the injuries sustained to his neck, head, and shoulder in the automobile collision and the injury sustained from bending over which occurred a month later.

■ Although appellant objected to the instruction, no modification was offered. The failure to offer modification may be considered in determining whether a variation from an MAI instruction is prejudicial, especially when the court gives the text instruction in express terms and the deviation consists of a failure to modify it. *Hudson,* 668 S.W.2d at 71–72 [5].

Appellant also cited *Hudson v. Carr* but it supports respondent's position more than it does appellant's.

Appellant relies as well on *Thweatt v. Haefner,* 539 S.W.2d 734 (Mo.App.1976). In *Thweatt,* plaintiff sought damages for injuries she sustained in an automobile collision, but the case is distinguishable, because in *Thweatt* there was a very serious question whether any one of three later occurrences produced or contributed to the injuries for which plaintiff sought damages. *Id.* at 735.

■ In the case under review, respondent's counsel repeatedly stated respondent was seeking relief only for the injuries to his neck and shoulder arising from the automobile collision with appellant. There was no evidence to support appellant's claim that the jury was confused over the word occurrence because of the other incidents.

In the same point in which he claims error in giving the instruction, appellant brings up several evidentiary matters. Appellant complains that he was not permitted to mention respondent's subsequent accident in his opening statement, that respondent appealed to the jury's sympathy by saying that he did not see the doctor because he could not afford it, and that respondent's counsel was allowed through examination of a witness to testify improperly that a state trooper had told him the day of the trial that appellant's vehicle was off the highway pavement.

The testimony volunteered by plaintiff that he did not see the doctor because of his financial condition was stricken by the trial court upon appellant's objection. Thus it is difficult to understand how appellant can allege error. Appellant received the relief he requested at trial.

■ The court properly exercised its discretion in forbidding appellant's counsel to mention in his opening statement that respondent made a workers' compensation claim for a lower back injury about 15 months after the collision. *Missouri Commercial Investment Company v. Employers Mutual Casualty Company,* 680 S.W.2d 397, 401 [7–9] (Mo.App.1984).

■ There was no error in permitting respondent's counsel to cross examine the state trooper in an attempt to impeach him by asking him a question based on an out of court private conversation between the trooper and respondent's counsel. Generally, *any statement of a witness inconsistent with his testimony should be admitted*

to discredit or impeach him, whether made in or out of court. *Neavill v. Klemp,* 427 S.W.2d 446, 447–448 [5–7] (Mo.1968). The trooper testified that he did recall the conversation and respondent's counsel went no further.

In appellant's second point he contends the trial court was guilty of prejudicial reversible error in overruling: 1) his objection to the reading of the deposition of Dr. Gerald Roberts because there was no evidence that Roberts was a licensed physician, and 2) in overruling his objection to Dr. Roberts' testimony about the possible permanency of respondent's injuries because the testimony was speculative. Both parts of appellant's point relied on are denied.

∎ Dr. Roberts qualified as an expert even though there was no specific testimony that he was a licensed physician. He testified to his education, specialized experience, knowledge of the field of medicine, and his memberships in medical associations and his staff position on two hospitals. This evidence is sufficient to qualify him as an expert, a determination with which is within the sound discretion of the trial court. *Eichelberger v. Barnes Hospital,* 655 S.W.2d 699, 704 [2] (Mo.App.1983).

∎ Finally, the trial court committed no error in overruling appellant's objection to Dr. Roberts' testimony concerning the permanency of respondent's injuries. The doctor testified "the pain as a result of that accident could possibly be a chronic injury and could bother Mr. Kopp off and on for an undetermined amount of time".

Appellant's counsel objected on the basis that the answer was not responsive and his objection was overruled. A trial court has considerable discretion in its rulings on the admissibility of evidence. *Bellistri v. City of St. Louis,* 671 S.W.2d 405, 406 [1] (Mo.App.1984). Here the trial court did not abuse that discretion in allowing the doctor's testimony.

Appellant relies on the cases of *Ficken v. Hopkins,* 389 S.W.2d 193, 202 (Mo.1965),

and *Bertram v. Wunning,* 385 S.W.2d 803 (Mo.App.1965). Neither case is apposite.

In *Ficken* the Supreme Court said that " 'expert testimony that a condition might or could have resulted from an accident or injury, when standing alone without other facts, is not substantial evidence from which a jury could find cause and effect' ". *Ficken,* 389 S.W.2d at 202 [16] quoting *Ketcham v. Thomas,* 283 S.W.2d 642, 649 (Mo.1955). The court went on to say, however, that "where there are other facts which tend to show an accident caused a certain condition, the assurance that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts". *Id.*

The doctor in *Ficken* had testified that the collision in evidence could have contributed to the plaintiff's condition. *Id.* The court then held that evidence of a nervous condition which did not exist before the accident and started immediately afterward, along with the doctor's "could have" testimony, was admissible. The court said that the evidence was of some aid to the jury in drawing inferences. *Id.*

In *Ficken,* too, the question was one of causation, not permanency. Assuming the same reasoning would apply here, *Ficken* supports the admission of the doctor's testimony. In the case at bar there was testimony by the plaintiff that his injuries were causing him pain and discomfort up to the time of the trial of the case. In both cases there was testimony by the plaintiff about his injuries, in *Ficken* on causation and in the case under review on permanency. In *Ficken* the medical expert testified on the possibility of causation, *Ficken,* 389 S.W.2d at 202 [16], and here the doctor testified on the possibility of permanency.

Whether Dr. Roberts' testimony was sufficient to support an instruction on future damages is a question which is not before this court.

In *Bertram,* the question was also causation, not permanency. The court of appeals ruled that the trial court erred in not granting defendant's request that a with-

drawal instruction be given on a doctor's equivocal and uncertain testimony concerning the possibility that the accident in question caused plaintiff's hernia which was diagnosed almost three months after the accident. *Bertram,* 385 S.W.2d at 807 [5, 6]. *Bertram* does not help appellant.

The judgment is affirmed.

REINHARD and CRIST, JJ., concur.