Elizabeth MacGregor KIRKCALDY, Plaintiff,

v.

RICHMOND COUNTY BOARD OF EDUCATION and Marcus Smith, Defendants.

Marcus Smith, Defendant and Third-party Plaintiff,

v.

Richmond County Board of Education, Bruce Stanback, Sandy Lampley, Herman Williams, Myrtle Stogner, Mary Carroll, Jackson Dawkins, Carlene Hill, in their individual and official capacities as members of the Richmond County Board of Education, Larry K. Weatherly, in his individual and official capacity as Superintendent of the Richmond County School System, Third-party Defendants.

No. 1:01CV00877.

United States District Court, M.D. North Carolina.

Aug. 23, 2002.

Larry Edwin Harrington, Thomas Harrington & Biedler, Monroe, NC, Allison Dickinson Khan, The Khan Law Offices, Monroe, NC, Marcus Samuel McGee, Whelchel May & Assoc., Knoxville, TN, for plaintiff.

Kara L. Grice, Tharrington Smith, Raleigh, NC, Jonathan Blumberg, Raleigh, NC, Kenneth A. Soo, Raleigh, NC, Kenneth P. Andresen, Christopher M. Vann, Andresen & Associates, Charlotte, NC, for defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This case comes before the Court on Defendant Richmond County Board of Education's ("Board") and Third-party Defendants Bruce Stanback, Sandy Lampley, Herman Williams, Myrtle Stogner, Mary Carroll, Jackson Dawkins, Carlene Hill, and Larry K. Weatherly's ("Individual School Defendants") Motion to Dismiss Defendant Marcus Smith's ("Smith") Cross-claim and Third-party Complaint (Document # 17). For the reasons stated below, the Motion to Dismiss is hereby GRANTED.

## I. FACTUAL BACKGROUND

Until August of 2000, Smith served as a principal of the Leak Street Alternative School, part of the Richmond County School System overseen by the Board. On September 14, 2001, Plaintiff Elizabeth Kirkcaldy ("Kirkcaldy"), who had worked as a secretary at the Leak Street Alternative School, filed a lawsuit against Smith and the Board. Kirkcaldy's Complaint [Document # 1] alleges that from approximately July 20, 1999 to June 12, 2000, she was subjected to sexual harassment by Smith, who served as her direct supervisor during that time. Kirkcaldy claims that during this time, Smith repeatedly made unwelcome sexual contact with Kirkcaldy by stroking her leg, touching her breasts under the facade of tickling, pressing his clothed erect penis against her, and attempting to embrace her and kiss her on the lips. Kirkcaldy also asserts that Smith frequently made comments of a sexual nature to her. Based on these facts, Kirkcaldy asserts the following claims: hostile work environment pursuant to 42 U.S.C. § 2000e et seq., intentional and negligent infliction of emotional distress against both the Board and Smith, and a claim for negligent supervision, retention and hiring against the Board.

In his Answer [Document # 8] to Kirkcaldy's Complaint, Smith brings a cross-claim against the Board and a third-party complaint against the Superintendent of the Richmond County School System, Larry K. Weatherly ("Weatherly"), and Board members Bruce Stanback, Sandy Lampley, Herman Williams, Myrtle Stogner, Mary Carroll, Jackson Dawkins, and Carlene Hill, all in their individual and official capacities. Smith's claim against these Defendants is filed pursuant to 42 U.S.C. § 1983 based on the Individual School Defendants and the Board's (together, "School Defendants") al-

leged violation of Smith's due process rights. It is this Section 1983 claim that the School Defendants now move to dismiss.

In support of his claim, Smith asserts the following alleged facts. On June 20, 2000, Weatherly informed Smith that he was being suspended with pay while Weatherly investigated the allegations of sexual harassment made by Kirkcaldy and another school employee, Sharon Renee Peek ("Peek"). Based upon the results of this investigation, on July 25, 2000, Weatherly changed Smith's suspension with pay to suspension without pay. Weatherly also informed Smith that a hearing before the Board regarding Smith's employment would be held in August of 2000. Weatherly further advised Smith that it would be recommended to the Board members that they terminate Smith from his position.

Prior to the Board hearing, which was held on August 24, 2000, Weatherly delivered to each Board member a copy of all the evidence he intended to present at the hearing against Smith. This evidence included references to polygraph examinations taken by Kirkcaldy and Peek. Smith asserts that this evidence was inadmissible at a school board hearing under North Carolina law. After reviewing the information provided to the Board members, including the references to the polygraph examinations, Myrtle Stogner, one of the Board members, allegedly made the statement to an unidentified individual that the case against Smith was "cut and dried" and that he would be dismissed for the alleged conduct.

At the August 24, 2000 hearing, Smith was allowed to present his evidence. Smith proffered fourteen affidavits from witnesses that rebutted the allegations of harassment made against Smith. Smith also submitted his medical records and his wife's affidavit demonstrating that he was impotent during the time period when the alleged harassment occurred, and therefore would have been physically unable to engage in some of the alleged misconduct. Smith requested a continuance of the hearing in order to obtain additional evidence concerning his impotence, but the Board denied his request.

At the conclusion of the August 24, 2000 hearing, the Board entered an order·dismissing Smith from his position as principal. Smith appealed the Board's decision dismissing him to the North Carolina Superior Court, which affirmed the Board's decision. Smith then appealed the North Carolina Superior Court's decision to the North Carolina Court of Appeals. This court affirmed the Superior Court's decision, which upheld the Board's decision to dismiss Smith.

Smith's present cross-claim and third-party complaint filed pursuant to Section 1983 claims that the School Defendants violated his due process rights by denying him a fair hearing prior to his dismissal. In response, the School Defendants have filed the Motion to Dismiss now before the Court, asserting that dismissal of Smith's cross-claim and third-party complaint is proper pursuant to Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of subject-matter jurisdiction.

## II. DISCUSSION OF DEFENDANTS' MOTION TO DISMISS

### A. Dismissal for Failure to State a Claim Pursuant to Rule 12(b)(6)

#### 1. Standard for a Motion to Dismiss for Failure to State a Claim

As one of their two bases for their Motion to Dismiss, the School Defendants request dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dismissal for failure to state a claim is only appropriate when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). In making this determination, the Court reviews the plaintiff's complaint using a relaxed standard, "accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

### 2. Res Judicata

■ To support their 12(b)(6) claim, the School Defendants assert that Smith's counterclaim and third-party complaint are barred by the doctrine of res judicata. Specifically, the School Defendants assert that Smith's claims are barred by his preceding lawsuit filed in state court. In that action, Smith exercised his right, pursuant to N.C. Gen.Stat. § 115C–325(n), to appeal the Board's decision to the North Carolina Superior Court. As part of his basis for the appeal, Smith asserted that the Board deprived him of a property and liberty interest without providing him with the requisite due process. On February 13, 2001, Judge C. Preston Cornelius of the General Court of Justice, Superior Court Division for Richmond County, North Carolina found that "there is substantial evidence to support the decision of the Richmond County Board of Education to dismiss the Petitioner, Marcus Smith, from his employment as a career employee" and "[t]he due process rights of the petitioner were not violated."[1] (Defs.' Motion to Dismiss, Attach. A at 5.) Relying on the principles of res judicata, also known as claim preclusion, the School Defendants assert that Smith is now barred from bringing his Section 1983 lawsuit in federal court.

■ When a federal court must determine if a prior state court proceeding precludes the federal lawsuit, the full faith and credit statute, 28 U.S.C. § 1738, requires the federal court to follow the state's preclusion law. *Artis v. Norfolk & Western Ry. Co.*, 204 F.3d 141, 147 (4th Cir.2000) (citing *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985)). In North Carolina, the doctrine of res judicata precludes a subsequent suit when there is "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 135, 337 S.E.2d 477, 482 (1985). If the School Defendants can demonstrate that these three res judicata requirements are satisfied, then it is proper for the Court to dismiss the second or subsequent action. *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986).

Opposing the School Defendants' res judicata argument, Smith insists that res judicata does not apply because the second requirement, that is, an identity of the cause of action in both the earlier and the later suit, has not been established. As previously mentioned, the School Defendants' earlier state court action requested judicial review of the Board's administrative decision to dismiss Smith, while Smith brings in the instant claim a Section 1983 action based on his due process rights. Smith contends that given the different elements, remedies, and issues involved in these two cases, the School Defendants cannot demonstrate an identity in the causes of action of the two cases.

Smith's position is substantially supported by a Fourth Circuit opinion, *Davenport v. North Carolina Dept. of Transp.*, 3 F.3d 89 (4th Cir.1993), which examined precisely the same issue. In *Davenport*, the Fourth Circuit considered whether, under North Carolina law, a state lawsuit in which an employee requested judicial review of his dismissal by a state entity served to preclude the employee's subsequent Section 1983 case against the state entity. *Davenport*, 3 F.3d at 91–92. After a detailed review of North Carolina law, the Fourth Circuit determined that these two claims "would not be considered the 'same claim' for res judicata purposes" under North Carolina law. *Id.* at 93. Relying on multiple North Carolina Supreme Court and North Carolina Court of Appeals decisions, the Fourth Circuit noted that North Carolina utilized a narrow transactional approach in order to determine whether an identity of claims exists. *Id.* at 94–96; *see also Crump v. Bd. of Educ. of Hickory Admin. Sch. Unit*, 326 N.C. 603, 611, 392 S.E.2d 579, 582–83 (1990); *Bockweg v. Anderson*, 333 N.C. 486, 493–94, 428 S.E.2d 157, 162 (1993). The Fourth Circuit then detailed the various differences between the two claims,

---

1. The Superior Court's ruling was upheld by the North Carolina Court of Appeals on May 21, 2002. (Defs.' Addendum to Mem. of Law Sup. Defs.' Mot. to Dismiss Cross-claim and Third-party Compl., Suggestion of Subsequently Decided Authority [Document # 25] at 1.)

noting, in part, that the administrative claim involved a violation of statutorily-protected rights, while the Section 1983 claim alleged violations of constitutional rights. *Davenport*, 3 F.3d at 96. As another distinguishing feature between the two claims, the Fourth Circuit underscored that the state court action was an administrative review proceeding in which the judge only performed a limited judicial review, while the Section 1983 action would allow a full trial with a right to a jury. *Id.* Each right of action also provided different types and measures of damages, in that a favorable verdict on the administrative proceeding could entitle the plaintiff to reinstatement and back and/or front pay, while the available remedies for the Section 1983 claim included compensatory and punitive damages. *Id.* After this detailed comparison, the Fourth Circuit concluded that the two proceedings differed so substantially that the employee could not enjoy an "ample opportunity to litigate in a single lawsuit, all claims arising from [the] transactions or series of transactions." *Id.* at 96–97. For this reason, the Fourth Circuit found that res judicata did not prevent the subsequent Section 1983 suit. *Id.*

As this discussion demonstrates, the Fourth Circuit has directly and thoroughly addressed the res judicata issue that is currently before the Court in this case. As the School Defendants have presented no argument that could serve to distinguish the instant case from *Davenport*,[2] the Court shall follow *Davenport's* holding that a Section 1983 action asserting a violation of a governmental employee's due process rights is not barred for res judicata purposes by a preced-

ing judicial review of the employee's administrative hearing.[3] The Court will therefore deny the School Defendants' Rule 12(b)(6) motion to dismiss to the extent that the School Defendants request dismissal of Smith's 1983 claim for failure to state a claim based upon res judicata.

### B. Dismissal for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

#### 1. Standard for a Motion to Dismiss for Lack of Subject–Matter Jurisdiction

■ Notwithstanding the Court's holding that dismissal pursuant to Rule 12(b)(6) is not warranted, the School Defendants also raise an additional argument for dismissal based on Rule 12(b)(1). Rule 12(b)(1) authorizes dismissal if the Court cannot exercise subject-matter jurisdiction over Smith's claims. In making this determination, the Court may, in some instances, look beyond the jurisdictional allegations of the complaint and may consider any evidence submitted. *Hammond v. Clayton*, 83 F.3d 191, 192 (7th Cir.1996); *Deuser v. Vecera*, 139 F.3d 1190, 1191 n. 3 (8th Cir.1998), *cert. denied*, 513 U.S. 1084, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995). However, when a defendant grounds its Rule 12(b)(1) challenge on a facial attack of the sufficiency of the pleading, the Court must, as with a Rule 12(b)(6) motion, accept the allegations of the complaint as true and construe all reasonable inferences in the manner most favorable to the plaintiff. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). In support of their 12(b)(1) argument, the School Defendants now facially attack the sufficiency of

---

2. The Court recognizes that the *Davenport* plaintiff's request for judicial review of the administrative hearing was statutorily authorized by the North Carolina State Personnel Act, N.C. Gen. Stat. §§ 126–1 *et seq.*, while Smith's request is governed by N.C. Gen.Stat. § 115C–325. However, the Court finds that this difference does not distinguish the instant case from *Davenport*, because both statutes rely on N.C. Gen.Stat. § 150B–51 to establish the standards for the judicial review of the administrative hearing. *Faulkner v. New Bern–Craven County Bd. of Educ.*, 311 N.C. 42, 49, 316 S.E.2d 281, 286 (1984). The Court therefore finds that the difference in the source of the statutory right to a hearing does not distinguish *Davenport* from Smith's situation.

3. The Court's review on this issue has been solely on whether res judicata, also called claim preclusion, bars Smith's cross-claim and third-party complaint. Although the circumstances surrounding the two lawsuits might suggest that issue preclusion could serve as at least a partial bar to Smith's current claims, the School Defendants have not asserted issue preclusion as a basis for their Motion to Dismiss. *Davenport*, 3 F.3d 89, 97 n. 9 ("That such claims are not properly treated as the same for res judicata purposes does not of course mean that all the virtues of res judicata in preventing relitigation of settled matters are made unavailable... [i]ssue preclusion remains a possibility whenever its elements ... are present.").

Smith's pleadings, arguing that Smith's claim against the School Board and his claim against the Individual School Defendants are not properly joined to Kirkcaldy's actions because Smith's claims do not satisfy the Federal Rules of Civil Procedure which govern the joinder of additional parties and claims to an existing action. As the School Defendants argue that different joinder standards apply to the Board than to the Individual School Defendants based on the Board's status as a co-defendant, the Court shall examine the arguments as to these two groups separately, beginning with Smith's claim against the Board.

### 2. Subject Matter Jurisdiction as to Smith's Cross-claim against the Board

■ When a co-defendant asserts a cross-claim against a co-defendant, as Smith now asserts against the Board, the co-defendant's cross-claim must meet the requirements of Rule 13(g). In relevant part, Rule 13(g) specifies that "[a] pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein." Fed.R.Civ.P. 13(g). The Board asserts that Smith's cross-claim does not qualify for joinder because the cross-claim does not arise out of the transaction or occurrence that is the subject of Kirkcaldy's suit, namely, the incidents of harassment that she allegedly suffered, which ended on June 12, 2000. Rather, the Board maintains that Smith's claim of a due process violation is based on the separate and different transaction or occurrence which involved the Board and Individual School Defendants' conduct in preparing and conducting the August 24, 2000 hearing that resulted in Smith's dismissal.

To determine whether Smith's cross-claim arises out of the same transaction and occurrence as Kirkcaldy's underlying claim, the Court refers to the Fourth Circuit case of *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988), in which the Fourth Circuit addressed this question, albeit in the context of a different subsection of Rule 13. The Fourth Circuit in *Painter* explained how to determine when a defendant's claim was a compulsory counterclaim, as defined by Rule 13(a), to the claims alleged in the plaintiff's complaint. *Id.* at 331. Like the Rule 13(g) cross-claim determination that is the subject of this Court's inquiry, the compulsory counterclaim determination under Rule 13(a) hinges on whether the claims arise from the same "transaction and occurrence." Accordingly, the Court finds that the Fourth Circuit's definition of the phrase "transaction and occurrence" in Rule 13(a) is directly relevant to the definition of the same term as used in Rule 13(g). *See, e.g., Zurn Industries, Inc. v. Acton Const. Co., Inc.*, 847 F.2d 234, 238 (5th Cir.1988) (finding that, when a cross-claim and counterclaim arose from the same transaction and occurrence, both Rule 13(g) and Rule 13(a) were satisfied); *United States v. Gilbert*, 478 F.Supp. 306, 312 n. 9 (S.D.N.Y.1979) (utilizing a Second Circuit case defining "transaction and occurrence" for Rule 13(a) to decide a challenge based on Rule 13(g)).

■ To determine if a cross-claim arose out of the same transaction or occurrence as the complaint, the *Painter* decision suggests conducting the following inquiries:[4] (1) Are the issues of fact and law raised in the complaint and cross-claim largely the same? (2) Will substantially the same evidence support or refute the complaint as well as the cross-claim? (3) Is there any logical relationship between the complaint and the cross-claim?

---

**4.** In addition to these three questions, the Fourth Circuit in *Painter* also utilized a fourth inquiry to determine if a counterclaim was compulsory or permissive: "Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?" The Court notes that this inquiry is specific to the factual situation involving compulsory counterclaims by a defendant against the plaintiff, because res judicata is designed to ensure that two parties litigate related claims against each other in the same proceeding. Here, however, when the Court must determine whether a defendant can properly bring a cross-claim against a co-defendant, the res judicata inquiry cannot meaningfully be used. For this reason, the Court finds that this fourth inquiry does not assist with the interpretation of "same transaction and occurrence" in a Rule 13(g) cross-claim.

*Painter,* 863 F.2d at 331. In considering these questions, the Court is mindful that these inquiries are guidelines and that it "need not answer all these questions in the affirmative" in order to find that the claims alleged in Kirkcaldy's Complaint and Smith's cross-claim arise from the same transaction and occurrence. *Id.*

Turning now to the first inquiry, which considers the identity of the issues of fact and law between the Complaint and the cross-claim, the Court recounts again that Kirkcaldy's Complaint alleges the following causes of action: sexual harassment during the period of July 20, 1999 and June 12, 2000 in violation of 42 U.S.C. § 2000e–2(a), intentional and negligent infliction of emotional distress, and a claim of negligent supervision, retention, and hiring against the Board. In comparison, Smith asserts in his cross-claim that the Board violated his property interest in his employment and his reputation for honesty and morality when it terminated him without providing him with the due process required by law. More specifically, Smith asserts that his due process rights were violated because the Board members were biased against him and thus could not serve as impartial decision-makers. Smith further asserts that Weatherly, prior to the hearing, improperly presented the Board members with evidence gathered against Smith. Finally, Smith also alleges that the evidence used by Weatherly wrongly included references to Kirkcaldy and Peek's polygraph results, which Smith alleges is prohibited by North Carolina law.

As the summary of the different counts asserted by Smith and Kirkcaldy demonstrate, Smith's Section 1983 claim against the Board and the Individual School Defendants does not involve the same questions of fact and law as Kirkcaldy's claims. With respect to the legal issues involved, Kirkcaldy's claims will focus on the legal questions of whether Smith engaged in conduct that qualified as sexual harassment and intentional or negligent infliction of emotional distress and whether the Board, as Smith's employer, should be held responsible for Smith's actions. Smith's claim, however, focuses on whether the Board violated his due process

rights during his suspension hearing. The legal questions presented by Smith's claim therefore would overlap very little, if at all, with Kirkcaldy's claims. With respect to whether there are common questions of fact, Kirkcaldy's claims and Smith's claim again would diverge. While the factfinder in Kirkcaldy's action will be asked to determine whether Smith actually sexually harassed Kirkcaldy during her employment from July 20, 1999 through June 12, 2000, the factfinder for Smith's claims must decide whether the Board's actions at the August 24, 2000 hearing, based on the information known to the Board at that time, violated Smith's due process rights. Although it is true that the same persons might be witnesses in both cases, Smith and Kirkcaldy's use of these witnesses will differ because their questions will be focused on different periods of time and different legal theories. This inquiry therefore suggests that Kirkcaldy and Smith's claims are not part of the same transaction or occurrence.

The Court now turns to the second inquiry, which asks whether the same evidence can support both Kirkcaldy's claims and Smith's cross-claim. Again, the Court finds that this consideration counsels against joining Smith's cross-claim to the original lawsuit. As already mentioned, Smith's case will focus upon the Board's treatment of him during its investigation and at the August 24, 2000 hearing in order to demonstrate the alleged bias of the Board members and Weatherly. Smith's evidence, therefore, will likely include a reference to the evidence that Weatherly gathered against him in investigating Kirkcaldy's and Peek's claims. Smith, of course, would contend that this evidence was improperly presented to the Board members prior to the August 24, 2000 Board meeting so as to deny Smith due process. Kirkcaldy, on the other hand, will not utilize the evidence regarding the occurrences at and immediately prior to the August 24, 2000 Board meeting. Instead, Kirkcaldy's proof will focus on testimony and other evidence regarding Smith's allegedly harassing treatment of her during the period of July 20, 1999 through June 12, 2000. The lack of evidentiary overlap between these claims leads the Court to conclude that this inquiry also sug-

gests that Smith's claim is not part of the same transaction and occurrence as Kirkcaldy's claims.

Although the first two inquiries suggest that Smith's claim does not rely on the same evidence, facts, or law as Kirkcaldy's claims and therefore the claims are not part of the same transaction or occurrence, the Court is cognizant that some cross-claims may still be part of the same transaction or occurrence as the underlying action "even though they do not involve a substantial identity of evidence with the claim." *Painter*, 863 F.2d at 332. Accordingly, despite the Court's finding regarding the first two inquiries, Smith's claim could still be part of the same transaction or occurrence as Kirkcaldy's action if it satisfies the third inquiry by demonstrating that it possesses a strong logical relationship to Kirkcaldy's action. The Court recognizes that the claims alleged by Smith and Kirkcaldy are necessarily related to some extent in a causal and chronological way, because Kirkcaldy's claims of sexual harassment were part of the evidence that the Board considered in reaching its decision to terminate Smith. However, Kirkcaldy's action will focus on what occurred between her and Smith, and the extent that the Board knew of the behavior or the potential of such behavior prior to its dismissal of Smith. This inquiry is logically attenuated from Smith's claims against the Board, which depends on whether the Board provided the necessary due process to Smith when they decided to terminate him from his position.

The weak logical relationship between these claims is demonstrated by the potential confusion a fact-finder might face if forced to hear the two cases together. Kirkcaldy's action will require the fact-finder to determine whether Smith sexually harassed Kirkcaldy. However, the fact-finder would need to switch its focus when considering Smith's cross-claim, for then the fact-finder must decide, irregardless of whether Kirkcaldy's claims of sexual harassment were in fact true, if the Board violated Smith's due process rights when it made its decision to terminate him. In light of the potential for confusion and given the different facts involved in Kirkcaldy and Smith's claims, the Court finds that the logical relationship between Kirkcaldy's Complaint and Smith's cross-claim is not strong enough to justify combining Smith's claims of due process violations with Kirkcaldy's claims of sexual harassment. The Court therefore concludes that Smith's claim against the School Board is not part of the same transaction and occurrence as Kirkcaldy's claims and therefore does not meet Rule 13(g)'s requirements.

Notwithstanding the Court's determination that Smith's cross-claim does not satisfy the requirements of Rule 13(g) because it does not arise from the same transaction or occurrence as Kirkcaldy's claims, Smith argues that his claim against the Board also qualifies for jurisdiction as a permissive counterclaim that is authorized by Rule 13(b). Pursuant to Rule 13(b), a party may state, as a counterclaim against an opposing party, any claim that is "not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b). The Board and Smith were originally co-defendants, and co-defendants do not qualify as opposing parties for the purposes of Rule 13(b). Smith argues, however, that when the Board brought its cross-claim against Smith for indemnification and contribution, the Board became an opposing party against whom Smith may bring an unrelated claim. The success of Smith's argument thus hinges on whether a cross-claim for indemnity by a co-defendant transforms the two co-defendants into opposing parties for whom the Rules regarding compulsory and permissive counterclaims apply.

Although the Federal Rules do not themselves address when a co-defendant becomes an opposing party, the majority of courts ruling on this issue have accepted the general premise that the term "opposing party" includes co-defendants once a substantive cross-claim is filed by one co-defendant against the other. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 561–62 (6th Cir.1995), *cert. denied*, 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 n. 11 (3d Cir.) (stating in dicta that the filing of a cross-claim transforms co-defendants into op-

posing parties), *cert. denied*, 528 U.S. 878, 120 S.Ct. 188, 145 L.Ed.2d 158 (1999); *Earle M. Jorgenson Co. v. T.I. United States, Ltd.*, 133 F.R.D. 472, 475 (E.D.Pa.1991); *Rainbow Mgmt. Group, Ltd. v. Atlantis Submarines Haw., L.P.*, 158 F.R.D. 656, 660 (D.Haw. 1994). However, and particularly relevant to the case at hand, several courts have suggested that a co-defendant does not become an opposing party if the cross-claim asserted by the other co-defendant is merely a claim of indemnity or contribution instead of a substantive claim. *Rainbow Management Group, Ltd.*, 158 F.R.D. at 659–60; *Paramount Aviation Corp.*, 178 F.3d at 146 n. 11. Such a limitation is warranted because a cross-claim for indemnity or contribution "would not introduce new issues into the case, and could, in all likelihood, be litigated without substantially increasing the cost or complexity of the litigation." *Rainbow Management Group, Ltd.*, 158 F.R.D. at 660. The Court finds that the *Rainbow Management Group's* analysis of when cross-defendants become opposing parties best furthers the purpose of the Federal Rules to "dispose of the entire subject matter arising from one set of facts in one action, thus administering complete and evenhanded justice expeditiously and economically." *Lasa Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 146 (6th Cir.1969) (citing *Blair v. Cleveland Twist Drill Co.*, 197 F.2d 842, 845 (7th Cir.1952)). Accordingly, as the Board's cross-claim consists only of a claim for indemnification and contribution, the Court finds that the Board's cross-claim does not provide Smith with the opposing party status needed pursuant to Rule 13(b) to assert a permissive counterclaim. Without such status, Smith's claims against the School Board do not qualify for inclusion with the instant case pursuant to the Federal Rules of Civil Procedure and the Court shall therefore grant, without prejudice, the School Board's Motion to dismiss Smith's claims for lack of subject-matter jurisdiction.

3. Subject–Matter Jurisdiction Joinder as to Smith's Claim against the Individual School Defendants

In addition to the Board's argument for dismissal of Smith's claim against it, the School Defendants' Motion to Dismiss also requests that the Court dismiss Smith's claim against the Individual School Defendants because Smith's third-party complaint does not satisfy the jurisdictional requirements of the Federal Rules of Civil Procedure. As the Individual School Defendants, unlike the School Board itself, were not parties to Kirkcaldy's original action, Smith's joinder of the Individual School Defendants must meet the requirements of one of the two Rules that allow the joinder of non-parties by a party defendant: Rule 14(a), which governs the impleader of non-parties as third-party defendants, or Rule 13(h), which governs the joinder of non-parties in certain other situations.

As Smith has characterized his claim against the Individual School Defendants as a third-party complaint, the Court will first consider whether Smith's claim satisfies Rule 14(a), the Rule that authorizes the addition of a third-party complaint to an action. Rule 14(a) allows a defendant to assert, as a third-party complaint, a claim against a person who is a non-party if that person is or may be liable to the defendant for part or all of the plaintiff's claims against him. Fed. R.Civ.P. 14(a). Turning now to Smith's third-party complaint, the Court notes that it nowhere asserts that the Individual School Defendants are liable to him for any damages he might be responsible for due to Kirkcaldy's claims of sexual harassment. Instead, Smith asserts a Section 1983 claim based on the Individual School Defendants' actions regarding Smith's discharge. As Smith's Section 1983 claim is not based on the secondary or derivative liability of the Individual School Defendants, it cannot serve as the basis for a third-party complaint. The Court therefore must conclude that Smith has failed to satisfy Rule 14(a)'s requirements and cannot use this Rule as the basis to join his claim against the Individual School Defendants to Kirkcaldy's action.

In light of the Court's holding that Smith has not satisfied the third-party practice requirements of Rule 14(a), Smith's claim as alleged in his third-party complaint must be dismissed unless the claims are authorized by

Rule 13(h). Rule 13(h) allows a cross-defendant, when asserting a cross-claim against another cross-defendant, to join to the cross-claim persons who are not parties to the original action. *See, e.g., Carbon Fuel Co. v. USX Corp.*, 867 F.Supp. 414, 418 (S.D.W.Va. 1994) (determining that Rule 13(h), which also applies to counterclaims, allows the joinder of a non-party to a defendant's counterclaim). It is important to underscore, however, that Rule 13(h) imposes as a necessary prerequisite that the cross-defendant first assert a claim against another cross-claim defendant. Smith cannot meet this prerequisite because of the Court's above decision dismissing his cross-claim against the Board. As a result, Smith's Third–Party Complaint against the Individual School Defendants can satisfy neither Rule 14(a) nor Rule 13(h) and therefore must also be dismissed.[5] Accordingly, the Motion to Dismiss for lack of subject matter jurisdiction is GRANTED to the Individual School Defendants as well as to the School Board.

## III. CONCLUSION

For the reasons stated above, the Court concludes that Smith has not satisfactorily demonstrated that his cross-claim against the Richmond County School Board arises from the same transaction and occurrence as Kirkcaldy's Complaint, as required by Rule 13(g). The Court further finds that Smith's attempt to join the Individual School Defendants to the instant case is also improper because it does not meet the requirements of Rule 14(a) or Rule 13(h). The Court shall therefore dismiss Smith's Cross–Claim Complaint and Third-party Complaint against the Board and the Individual School Defendants without prejudice.

An ORDER consistent with this Memorandum Opinion will be entered contemporaneously herewith.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

It is HEREBY ORDERED that Defendant Richmond County Board of Education and Third–Party Defendants Bruce Stanback, Sandy Lampley, Herman Williams, Myrtle Stogner, Mary Carroll, Jackson Dawkins, Carlene Hill, and Larry K. Weatherly's Motion to Dismiss Defendant Marcus Smith's Cross-claim and Third-party Complaint [Document # 17] is GRANTED for lack of subject-matter jurisdiction. As the Court has determined that Smith's cross-claim and third-party complaint do not qualify for subject matter jurisdiction pursuant to the Federal Rules of Civil Procedure, the Court hereby dismisses Defendant Marcus Smith's cross-claim against Defendant Richmond County Board of Education and his third-party complaint against Bruce Stanback, Sandy Lampley, Herman Williams, Myrtle Stogner, Mary Carroll, Jackson Dawkins, Carlene Hill, and Larry K. Weatherly, in their individual and official capacities, without prejudice.

---

5. In light of the Court's decision to dismiss Smith's claims against the Individual School Defendants, it is not necessary for the Court at this time to consider the Individual School Defendants' argument that Smith's Third–Party Complaint should also be dismissed on the basis of the Individual School Defendants' qualified immunity as municipal government officials.