**RAINBOW MANAGEMENT GROUP, LTD., Plaintiff,**

v.

**ATLANTIS SUBMARINES HAWAII, L.P., Defendant.**

Civ. No. 94–00496 HMF.

United States District Court,
D. Hawai'i.

Nov. 25, 1994.

Jeffre W. Juliano, Reinwald O'Connor Marrack, Hoskins & Playdon, Honolulu, HI, for plaintiff.

David P. Ledger, Carlsmith Ball Wichman, Murray Case Mukai & Ichiki, Honolulu, HI, for defendant Atlantis Subs.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FONG, District Judge.

On November 7, 1994, the court heard defendant Atlantis Submarines Hawaii, L.P.'s motion for summary judgment. For the reasons detailed below, the court GRANTS the motion.

### INTRODUCTION

Plaintiff Rainbow Management Group ("RMG") has sued defendants Atlantis Submarines Hawaii, L.P. ("Atlantis") and George A. Haydu ("Haydu") for damages to and loss of use of RMG's vessel Elua, sustained when the Elua collided with Haydu's vessel. Defendant Atlantis has filed the instant motion for summary judgment. Atlantis argues that RMG's claims are barred because they were compulsory counterclaims not pleaded in previous litigation regarding the collision.

### BACKGROUND

Defendant Atlantis operates commercial submarine tours off-shore at Waikiki Beach. At the time of the accident, RMG was under contract with Atlantis to transport passengers back and forth from the shore to the submarine.

On January 27, 1992, RMG's vessel Elua was ferrying passengers from the shore to Atlantis' submarine Atlantis X. The exchange of passengers required the Elua and Atlantis X to come alongside each other to allow their respective crews to secure the two vessels with lines. After the vessels were tied together, a ramp was placed between the two vessels for the passengers to walk on.

That same day, Haydu and four passengers were aboard Haydu's vessel, the Boston Whaler, preparing to scuba dive. The Boston Whaler was moored at an Atlantis reef approximately 200 yards from where Elua and Atlantis X were beginning to transfer passengers.

The Elua collided with the Boston Whaler. The Boston Whaler was destroyed, and several of its passengers suffered personal injuries. The Elua was damaged and repaired.

Plaintiff RMG now seeks recovery against Atlantis for damages to Elua's hull and the resultant loss of use of the vessel. In response, Atlantis asserts that RMG's claim is a compulsory counterclaim that RMG should have asserted in a previous lawsuit by one of the injured Boston Whaler passengers against Atlantis, RMG, and Haydu. *See Berry v. Atlantis Submarines Hawaii, L.P.*, Civil No. 93–00580 SPK (*"Berry"*). The procedural history of *Berry* is set forth below.

### PROCEDURAL HISTORY

George Martin Berry, a passenger on the Boston Whaler on June 27, 1992, was injured as a result of the collision. Berry and his wife sued Atlantis and RMG as co-defendants on July 22, 1993. The complaint alleged that both Atlantis and RMG were negligent in the operation of their vessels.

On August 23, 1993 Atlantis filed a cross-claim against RMG and a third-party complaint against Haydu. Its cross-claim

against RMG stated two counts, one for breach of contract, and the second for contribution and indemnity.

On September 3, 1993, RMG filed a cross-claim against Atlantis and a third-party complaint against Haydu.[1] RMG sought contribution and indemnity, denied any wrongdoing, and prayed for joint and several liability against Atlantis and Haydu. However, RMG did not assert its claim for damage to or loss of use of the Elua resulting from the January 27, 1992 collision.

On April 19, 1994, Haydu filed an amended answer and counterclaim against Atlantis and RMG. Haydu claimed that Atlantis and RMG had been negligent and were responsible for damage to his vessel. Haydu also denied responsibility for plaintiff Berry's claims. On April 28, 1994, RMG answered Haydu's counterclaim, denying liability for Haydu's losses and asserting the right to contribution and indemnity. However, RMG again failed to assert its Elua damage claim.

In June 1994, RMG filed a second suit (the subject of the instant summary judgment motion). In this suit, RMG sought recovery for damage to the Elua and loss of its use resulting from the collision of June 27, 1992. On August 30, 1994, RMG moved to consolidate its suit with the still-pending *Berry* case. However, Magistrate Judge Barry Kurren denied the motion, because of delay and prejudice to the opposing parties.[2]

Atlantis and RMG have settled with the parties in the *Berry* case. In addition, RMG has settled with Haydu in the instant case. Thus, the only remaining controversy is between RMG and Atlantis.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

If the moving party meets its burden, then the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *T.W. Elec. Serv.,* 809 F.2d at 630. The opposing party cannot stand on the pleadings nor simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The standard for summary judgment reflects the standard governing a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec. Serv.,* 809 F.2d at 631. Inferences from the facts must be drawn in

---

1. In its pleadings, RMG incorrectly identified its claim against Haydu as a counterclaim.

2. RMG filed its motion for consolidation several months after the deadline for amended pleadings

set by the Rule 16 scheduling order, after discovery was closed and approximately one and one-half months before the trial date.

the light most favorable to the non-moving party. *Id.*

### DISCUSSION

 In support of the instant motion, Atlantis argues that RMG's claims are compulsory counterclaims, barred by Fed.R.Civ.P. 13(a) because RMG failed to assert them in the *Berry* case. Rule 13(a) provides in pertinent part:

> Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim....

Fed.R.Civ.P. 13(a). Atlantis argues that, after it filed its initial cross-claim against RMG, RMG became an "opposing party" within the meaning of Rule 13(a), and thereafter was required to plead any claims against Atlantis that arose out of the same transaction or occurrence as the initial cross-claims.

In response, RMG argues that its Elua claim is not a compulsory counterclaim, but is instead a permissive cross-claim pursuant to Fed.R.Civ.P. 13(g). Rule 13(g) provides in pertinent part:

> Cross–Claim Against a Co–Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein....

Fed.R.Civ.P. 13(g). RMG argues that Atlantis was a co-party in the *Berry* case, not an opposing party. Thus, RMG could have asserted its Elua claim in the *Berry* case, but it was not required to do so.[3]

This issue appears to be an open question in the Ninth Circuit, and the case law from other circuits is limited and contradictory. *See, e.g., U.S. v. Confederate Acres Sanitary Sewage & Drainage Sys.,* 935 F.2d 796, 799

(6th Cir.1991) ("cross-claims against co-defendants are permissive"); *Earle M. Jorgenson Co. v. T.I. United States, Ltd.,* 133 F.R.D. 472, 474 (E.D.Penn.1991) ("[O]nce a cross-claim has been pleaded, the cross-claimant becomes an opposing party, and 'the party against whom the cross-claim is asserted must plead as a counterclaim any right to relief that party has against the cross-claimant that arise from the same transaction or occurrence'" (internal citations omitted)).

Professor James W. Moore addresses this problem in his treatise, and concludes that co-parties become opposing parties within the meaning of Rule 13(a) after one party pleads a cross-claim against the other:

> [A]ssume that A and B sue X on a contract claim; and X pleads a permissive counterclaim for damages caused by the negligence of A and B. A may plead a cross-claim against B to the effect that B is liable to A for all or part of X's claim. A's claim is related to X's counterclaim, but it has certain characteristics of an independent claim, since it in no way affects X. If B, now an *opposing party* to A on the cross-claim also has a claim against A, which arises out of the same transaction or occurrence that is the subject matter of A's cross-claim against him, such a claim is a counterclaim within subdivision (a) and must be pleaded, unless within an exception thereto.

3 James W. Moore and Jo Desha Lucas, *Moore's Federal Practice,* ¶ 13.34, at 13–209–210 (2d. ed. 1985) (emphasis in original, footnotes omitted).

The Supreme Courts of Kansas and Alaska have also adopted this approach. *See Miller v. LHKM,* 751 P.2d 1356 (Alaska 1988); *Mohr v. State Bank of Stanley,* 734 P.2d 1071 (Kansas 1987). Furthermore, this approach is consistent with the goal of judicial economy and reducing unnecessary litigation, because it encourages parties to plead all claims arising out of a single incident and to resolve such claims in a single lawsuit.

---

**3.** Alternatively, RMG argues that its Elua damage claim does not arise from the same transaction or occurrence as the *Berry* case. This contention is without merit. Both lawsuits resulted from the June 27, 1992 collision involving the three vessels, Elua, Boston Whaler, and Atlantis X. Moreover, in its motion for consolidation, RMG itself claimed that "[b]oth lawsuits arise out of the same occurrence, with the underlying facts identical and common fact witnesses."

The court finds Professor Moore's approach to this issue to be persuasive, and, accordingly, adopts the following rule: Co-parties become opposing parties within the meaning of Fed.R.Civ.P. 13(a) after one such party pleads an initial cross-claim against the other. The court holds, however, that this rule should be limited to situations in which the initial cross-claim includes a substantive claim (as opposed to merely a claim for contribution and indemnity). The reason for this modification is that an unlimited rule may actually increase the amount or complexity of litigation.

For example, assume in the instant case that Atlantis' initial cross-claim did not include a substantive claim for breach of contract, but merely a claim for contribution and indemnity. In the typical case, RMG would respond with a cross-claim of its own for contribution and indemnity. Such cross-claims would not introduce new issues into the case, and could, in all likelihood, be litigated without substantially increasing the cost or complexity of the litigation.

If the court were to adopt Professor Moore's approach without the limitation discussed above, however, RMG would be forced to file all additional claims against Atlantis arising from the same transaction or occurrence underlying the initial cross-claim. RMG might therefore choose to file claims it might otherwise have chosen *not* to litigate, such as claims for minor damages or other claims for small dollar amounts. The court's modified approach eliminates this problem, because claims against the initial cross-claimant only become compulsory when the initial cross-claim itself includes substantive claims.

This conclusion finds support in *Hall v. General Motors,* 647 F.2d 175, 184 (D.C.Cir. 1980). In *Hall,* then-Judge Ginsburg held that, although cross-claims are generally permissive, "[i]f matured claims were involved, an answering cross-claim might well be compulsory[,] [b]ut claims for contribution and indemnity contingent upon the outcome of another claim have not been placed in the compulsory category." *Id.* (footnotes and citations omitted).

In the instant case, Atlantis' initial cross-claim included a claim for contribution and indemnity, as well as an additional substantive claim for breach of contract. RMG was therefore on notice that it would have to defend against claims other than its own original claim. Accordingly, under the rule adopted today, the court GRANTS Atlantis' motion for summary judgment.

*CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.